IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:19-cv-04075-MDH |
| | ) |
| UNION PACIFIC RAILROAD COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 50). Plaintiff Christopher Webb sued Defendant Union Pacific Railroad Company ("UPRR") for negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60. The complaint arises from an incident on June 27, 2018, in Jefferson City, Missouri, in which Plaintiff, an employee of Defendant, slipped and fell while walking between Defendant's locomotive and another of Defendant's railroad tracks, sustaining injuries. Defendant moved for summary judgment on the basis that: (1) Section 213.103 of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. §§ 20101-20121, precludes Plaintiff's FELA claim as a matter of law; (2) If Plaintiff's FELA claim is not precluded, Plaintiff is required to and has failed to present expert witness testimony with respect to Plaintiff's contention that the ballast between the tracks created an unreasonably safe condition; and (3) Plaintiff's allegation that Defendant breached MO. REV. STAT. § 389.797, which would support a negligence per se finding, is precluded by the FRSA, and in the alternative, Plaintiff has failed to produce evidence that Defendant violated § 389.797. For the reasons set forth herein, Defendant's Motion for Summary Judgment is denied.

1

## BACKGROUND

Webb was employed by UPRR starting in 1999 and began working as a brakeman in 2007. Webb worked approximately half the time in UPRR's Jefferson City yard, where Webb's job was comprised of working with an assigned crew to "switch" railcars—meaning add, remove, and move rail cars to build trains for other crews to take to different locations. On June 27, 2018, Webb and his crew took a train on track 3 into the yard, traveling east, and stopped near the 4-5 track switch so that Webb could alight from the train and align the switch for a later move. As Webb got off the train and began to walk toward the 4-5 switch, Webb slipped and fell. Specifically, Webb described his fall:

> …it was, like, the ballast gave way. It was like…a mini avalanche or something. And it slid. The ballast gave way and I ended up going in a backwards direction trying to catch myself…and I ended up in one of these voids [referencing photographs of the area of the fall] with my shin against the rail…

(Defendant's Deposition. Of Christopher Webb).

The fall at issue resulted in Webb severely twisting his knee and tearing his meniscus, requiring surgery. Despite undergoing surgery in July 2018, Webb alleges that he continues to experience knee pain and is unable to return to work for UPRR because Webb has difficulty walking on uneven ground. Webb states that his physician determined that Webb is permanently disabled and will require a total knee joint replacement in the future.

UPRR places ballast—essentially, large rocks—throughout its railyards, including in the area in which Webb fell, to structurally support the tracks and to provide proper drainage. Track-supporting ballast is required under the FRSA and Federal Railroad Administration ("FRA") regulations. *See* 49 U.S.C. §§ 20101-20121; 49 C.F.R. § 213.103. UPRR contends that the ballast foul of the track was in the condition it was in at the time of Webb's fall to support the track and drainage, satisfying the FRSA, and UPRR asserts that Webb's claim is entirely related

to the ballast in the area of his fall. Webb disputes this and states that he identified a variety of factors, in addition to the ballast, that caused or contributed to cause his fall.

First, Plaintiff argues that there is evidence that some of the ballast in the immediate vicinity of the incident had been recently dug up to weld the rail and had not been replaced or tamped down. (Doc. 58-2). Second, he claims that the area around the 4-5 switch had been dug out (Doc. 58-2) to avoid freezing during the winter months, but the hole was never filled in during the summer months, including on June 27, 2018, and Webb alleges this further contributed to cause Webb's incident and injuries after he initially slipped. Third, Webb alleges the ballast size was too large. UPRR's own ballast standards call for the use of yard ballast that is 1½ inches or smaller, yet the ballast in the immediate vicinity of Webb's incident appeared to contain much larger rocks (Doc. 58-8, Testimony of Ryan Wright, 65:11-16) Finally, Webb identified potential tripping hazards such as anchor plates and broken tie pieces. (Doc. 58-6).

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than

simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

### I. FRSA Preclusion

UPRR alleges that the FRSA precludes Webb's claims, and further that 49 C.F.R. § 213.103 substantially subsumes Plaintiff's claims. This Court concludes that the FRSA does not have preclusive effect as to bar Webb's FELA claims. Even if the FRSA does preclude FELA, only one of Webb's claims directly concerns ballast, and so Webb's FELA claim as a whole is not precluded by the FRSA or § 213.103.

UPRR contends that Webb's only theory of negligence under FELA centers on alleged unreasonableness regarding the size, compaction, and location of ballast—UPRR, then, suggests that this theory is precluded because UPRR was in compliance with FRSA in its use of ballast. Specifically, UPRR asserts that Webb's claim is precluded by 49 C.F.R. § 213.103, which states in its entirety:

> Unless it is otherwise structurally supported, all track shall be supported by material which will —
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

4

> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alinement.

The FRSA was enacted in 1970, with the stated purpose of "promot[ing] safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." 49 U.S.C. § 20101. While FELA is a general negligence statute that neither requires nor prohibits specific conduct by a railroad, the FRSA proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations. *Madden v. Anton Antonov & AV Transp., Inc.*, 156 F. Supp.3d 1011, 1018 (D. Neb. 2015) (citing *Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000)); *see* 49 U.S.C. § 20103.

The FRSA unequivocally preempts state laws, regulations, and lawsuits. 49 U.S.C. § 20106(a)(2). The statute provides:

> A state may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters) … prescribes a regulation or issues an order covering the subject matter of the State requirement.

In *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), The Supreme Court held that a state-law negligence claim is "covered" and thus preempted if a FRSA regulation "substantially subsume[s]" the subject matter of the suit.

In the case at hand, the question is whether the preemption power of the FRSA over state law negligence suits should also preclude negligence suits under FELA. Here, there is no issue as to whether Plaintiff brought an action under state law, but rather this case concerns the potential preclusion of a cause of action under one federal statute by the provisions of another federal statute. *See Madden,* 156 F. Supp.3d at 1019. "While preclusion analysis is not governed by the 'complex categorization' applicable to pre-emption, the principles of pre-emption are 'instructive insofar as

5

they are designed to assess the interaction of laws that bear on the same subject.'" *Id.* (quoting *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 201, 112, 134 S.Ct. 2228, 2236, 189 L.Ed.2d 141 (2014)). "The matter is ultimately a question of statutory interpretation." *Madden*, 156 F. Supp.3d at 1019 (citing *POM Wonderful*, 573 U.S. at 112).

This Court is mindful of the differing conclusions reached by other courts as to the preclusive effect of the FRSA on FELA causes of action. The Seventh Circuit has held that FELA claims are precluded by the FRSA, concluding that allowing a plaintiff to argue negligence under FELA but not state law would undermine the railroad safety uniformity intended by Congress. *Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000) (holding FELA claims are precluded if similar state-law claims would be preempted), and the Fifth and Sixth Circuits have adopted *Waymire's* reasoning. *Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439, 443 (5th Cir. 2001); *Nickels v. Grand Trunk W.R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009). Other courts have disagreed with the reasoning and result in *Waymire*, concluding that reliance on the state-law-specific preemption analysis in *Easterbrook* is misguided. *See, e.g., Madden, supra*; *Earwood v. Norfolk S. Ry. Co.,* 845 F. Supp. 880, 891 (N.D. Ga. 1993); *Myers v. Ill. Cent. R.R. Co.,* 753 N.E.2d 560, 565 (Ill. App. 2001); *Powell v. Union Pac. R. Co.*, 2013 WL 1857893 (E.D.Cal. May 2, 2013).

Notably, however, the Eighth Circuit has articulated disagreement with the reasoning and reliance on *Waymire* by the Fifth, Sixth, and Seventh Circuits. In *Cowden v. BNSSF Ry. Co.*, 690 F.3d 884, 891-92 (8th Cir. 2012), the Eight Circuit declined to create a circuit split regarding the FRSA's preclusive effect on FELA by noting that the issue was not squarely presented by the posture of the case. However, that court stated: "We have previously noted that the FRSA…were adopted to address the patchwork effect of each state applying its own set of regulations. To this

6

extent, it is not clear how negligence claims brought under the federal common law threaten the uniformity sought by the FRSA." *Id*. at 891 (citations omitted).

Since its decision in *Easterbrook,* which focused on state law *preemption* rather than federal law *preclusion*, the Supreme Court has provided the relevant framework for analyzing whether a federal statute has any preclusive effect over a claim made pursuant to another federal law. *POM Wonderful*, 573 U.S. There, the issue was whether a claim under the Lanham Act, alleging that a defendant used a deceptive and misleading label on its product, was precluded by the Federal Food, Drug and Cosmetic Act (FFDCA), which forbids the misbranding of food, and places enforcement thereof in the hands of the FDA. The Court held the suit was not precluded because (1) there was no statutory text or established principle to support preclusion; (2) nothing relating to either statute showed a congressional purpose or design to forbid such suits; and (3) the two statutes complemented each other in the federal regulation of misleading food and beverage labels. *Id.* at 113-20.

The parties here dispute the significance and result of applying the *POM Wonderful* framework to the FRSA's preclusive effect or lack thereof over FELA. Webb correctly notes that by the FRSA's plain terms, the FRSA's preemption provision only applies to state laws, rather than federal laws. 49 U.S.C. § 20106(a)(2). However, the lack of express preemption language in the FRSA, while relevant, is likely not definitive. *See Jones v. BNSF Ry. Co.,* 306 F. Supp.3d 1060, 1067 (C.D. Ill. 2017); *Henderson v. Amtrak*, 87 F.Supp.3d 610, 616-618 (S.D.N.Y. 2015); *Norfolk S. Ry. Co. v. Hartry*, 837 S.E.2d 303, 307-308 (Ga. 2019).

The crux of the arguments by both UPRR and Webb revolve around whether or not the *Waymire* line of reasoning—finding that FELA must be precluded by the FRSA to effectuate the uniformity of railroad safety regulation—should be reconsidered in light of *POM Wonderful* and

7

more recent cases. UPRR contends that decisions against the FRSA's preclusive effect either ignore or downplay a clear FRSA mandate to create a national, uniform set of laws and regulations governing rail safety, and that the FRSA expressly supplements FELA. Furthermore, UPRR argues that allowing a FELA claim to go forward with a standard of care higher than an FRSA regulation would eviscerate the statutory scheme, undermining the FRA's judgment on railroad safety issues on a case-by-case basis.

This Court is unpersuaded by this argument, because the FRSA and FELA act complementary to one another, rather than in opposition. The FRSA seeks to enhance safety in "every area of railroad operations," and protects the public as well as railroad workers. *Madden*, 156 F. Supp.3d at 1021; 49 U.S.C. § 20101. The FRSA gives the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety," through national, comprehensive regulatory standards. *Jones*, 306 F. Supp.3d at 1069 (quoting 49 U.S.C. § 20103(a)). FELA, on the other hand, deals solely with the safety of railroad workers and provides a private cause of action through the common law of negligence. *Id*. The court in *Madden* found that:

> FRSA was not created to provide uniformity for the sake of uniformity. The statute's stated purpose is to enhance railroad safety and reduce accidents. 49 U.S.C. § 20101. And allowing safety related suits under FELA will enhance, rather than impede, that purpose. FRSA regulations provide comprehensive minimum safety standards that apply to a broad range of situations. However, a railroad's conduct may comply with those standards, yet still fall below the level of ordinary care expected of any reasonable person. And at least as to railroad employees, FELA suits serve to ferret out such situations that might otherwise evade the attention of regulators or that are less amenable to uniform, regulatory solutions. This enhances safety by providing additional incentives for railroads to conduct their operations safely.

*Madden*, 156 F.Supp.3d at 1020-21. Ultimately, this understanding aligns with the Eighth Circuit's concern in *Cowden*: the FRSA regulation are intended to alleviate the "patchwork effect" of each

state applying its own set of analogous safety regulation, and to that end, it is not apparent how allowing negligence claims by employees under FELA would threaten the purpose of the FRSA.

It is further worth noting the trend of cases ruling on the FRSA's preclusive effect over FELA since the *POM Wonderful* decision has been to find that FELA is not precluded. *See, e.g., Jones*, 306 F.Supp.3d at 1067-70 (FELA claim for failure to maintain track not precluded by FRSA regulation covering the same subject matter); *Bratton v. Kansas City Southern Ry. Co.*, 2015 WL 789127, at *1-2 (W.D.La. 2015) (negligent training/certification claim under FELA not precluded by FRSA); *Henderson v. Nat'l R.R. Passenger Corp.*, 87 F.Supp.3d 610, 611-12, 615-22 (S.D.N.Y. 2015) (FELA claim regarding defendant's failure to protect plaintiff from approaching train was not precluded by FRSA); *Madden*, 156 F.Supp.3d at 1018-19, 22 (plaintiff's FELA claim for failure to provide additional warning devices at railroad crossing was not precluded by FRSA); *Meachen v. Iowa Pacific Holdings*, 2016 WL 7826660, at *4 (D. Mass. 2016) (denying defendant's motion for summary judgment, holding that the FRSA does not preclude FELA claims); *Hanaburgh v. Metro-North Commuter R.R.*, 2015 WL 1267145, at *4-5 (S.D.N.Y. 2015).

Even if this Court found that the FRSA could preclude Webb's FELA claim, it does not find that preclusion would completely eliminate Webb's claims. UPRR asserts that Webb's claims fall entirely within the scope of 49 C.F.R. § 213.103, in that Webb claims only allege that UPRR was negligent in its use and maintenance of the ballast at the site of Webb's fall. UPRR has the burden at the summary judgment stage to show that § 213.103 applies to Webb's claim. *See Cowden*, 690 F.3d at 892. "Preclusion analysis…requires consideration of whether an FRSA regulation 'substantially subsumes' the negligence claim.'" *Id.* at 893.

To establish that regulations cover the plaintiff's claim, a defendant "must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive

9

term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Easterwood,* 507 U.S. at 664 (internal citation omitted). UPRR contends that all of Webb's claims are substantially subsumed by the ballast regulations, and further attempts to characterize Webb's claims as capable of being reduced down to ballast compaction and ballast location. Most relevant are § 213.103's provisions that "all track shall be supported by material which will…Provide adequate drainage for the track; and…Maintain proper track crosslevel, surface, and alinement." 49 C.F.R. § 213.103.

Webb's allegations as to UPRR's negligence allege four main issues: (1) a rail near the site of the fall had been recently welded, which required digging, and the walking surface had not been returned to a safe condition; (2) there was a hole dug near to Webb's fall to prevent freezing in winter months, but was present and contributed to Webb's injuries; (3) there was debris near the site of Webb's fall; and (4) the oversized ballast in the area caused or contributed to Webb's fall. The fourth claim relating to ballast size certainly relates to ballast regulations, as UPRR argues. It is not clear how UPRR categorizes the other three allegations as matters purely about ballast, however. The first two issues involve the creation of holes or "voids" in the ground, which do not fall squarely within regulations overseeing ballast usage. The claim regarding the presence of debris in the area also does not pertain to ballast regulations, since debris is not ballast or a part thereof. UPRR does not allege that claims unrelated to ballast are subsumed by § 213.103, and instead choosea to rely on a basic assertion that all of Webb's claims are, in fact, directly invoking ballast regulations. This Court finds that UPRR did not meet its burden in proving that § 213.103 could preclude Webb's three claims unrelated to ballast.

With respect to Webb's claim regarding oversized ballast, the Court agrees that, if there was a valid preclusive effect of the FRSA over FELA, this claim would be precluded by § 213.103.

10

UPRR cites *Nickels*, in which the court found that § 213.103 covers the issue of ballast size and precluded the plaintiff's FELA claims on that matter. *Nickels,* 560 F.3d at 431. *See also*, *See, e.g.*, *Sanchez v. BNSF Ry. Co.*, 976 F. Supp. 2d 1265 (Dist. N.M. 2013) (holding that plaintiff's negligence claim that the allegedly oversized track ballast caused him to fall and injure himself was preempted); *Ward v. Ill. Cent. R.R. Co.*, 2013 Tenn. App. LEXIS 404, at *27-32, 2013 WL 3128974 (June 20, 2013) (finding plaintiff's claims indistinguishable from *Nickels* and therefore precluded); *Munns v. CSX Transp., Inc.*, 2009 U.S.Dist. LEXIS 30394, at *5-7, 2009 WL 805133 (N.D. Ohio Mar. 27, 2009); *Norris v. Cent. of Ga. R.R. Co.*, 280 Ga. App. 792, 635 S.E.2d 179, 183 (Ga. App. 2006) ("To the extent that Norris' FELA claim rests upon different ways by which [the railroad] might have supported the mainline track to comply with 49 C.F.R. § 213.103, the negligence claim is precluded."). Webb argues that the ballast at the site of his fall exceeded UPRR's own standards for ballast size. This is immaterial—despite UPRR's promulgation of more specified standards of the ballast it uses, ultimately any question as to the propriety of ballast size rests in the federal regulations. This Court is persuaded that § 213.103 would cover Webb's claim regarding oversized ballast.

To summarize, this Court finds that Webb's FELA claim is not precluded by the FRSA as a matter of law. While there are varied rulings on the issue, this Court finds that the FRSA and FELA act as complementary laws, and that allowing FELA claims does not threaten the uniformity of FRSA regulations or hinder the overall objectives of the FRSA. Furthermore, this Court rejects UPRR's assertion that Webb's FELA claim only alleges negligence regarding ballast. The bulk of Webb's claim, then, would not be precluded even if the FRSA has preclusive effect over a FELA claim based solely on issues surrounding ballast.

## II. Expert Testimony

UPRR next asks for summary judgment based on, assuming that Webb's FELA claim is not precluded by the FRSA, UPRR is nonetheless entitled to judgment as a matter of law because Plaintiff has identified no expert witness to testify that the ballast created an unreasonably safe condition and that it could have been reasonably removed by UPRR. The motion for summary judgment on this ground is denied.

Technical questions, outside the knowledge of a layman, unquestionably require expert witness testimony. *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980). This general rule applies to railroad operations. *See Beanland v. Chicago, R.I. & P.R. Co.,* 480 F.2d 109, 116 (8th Cir. 1973). UPRR argues that Webb needs an expert witness to testify that ballast-related conditions were unreasonably unsafe and UPRR could have changed those conditions without violating the FRSA ballast regulation, including by impacting track drainage and stability, and increasing the likelihood of other safety-related issues. This argument fails for two reasons. First, as discussed above, Webb's claims do not fall solely within the realm of ballast-related issues. Therefore, UPRR's argument does not address the allegations that there were holes in the ground near where Webb fell, as well as debris.

Second, even assuming UPRR's argument on expert testimony could be applied to Webb's entire claim, including the ballast-related claim, the argument still fails as a matter of law. Webb alleges that UPRR was negligent in maintaining safe conditions in the area between tracks where the fall occurred. Webb acknowledges that the incident involves a "simple trip and fall which was caused or contributed to be caused by oversized ballast, debris, and the failure to resurface the area disturbed for a rail weld or refill holes dug out for winter." (Plaintiff's Response to Def. Motion for Summary Judgment at 38). UPRR, on the other hand, contends that

this case is substantially dissimilar to a slip and fall case by stating that Webb was injured in a "dynamic railyard in between two sets of sets of railroad tracks," and  "Plaintiff's [allegations] encompass issues of track support, track drainage, track maintenance, and safety of employees switching tracks…[a]s a result, these technical issue control whether the area in which Plaintiff fell was in an unsafe condition that could have been reasonably remedied by UPRR." (Def. Reply in Support of its Motion for Summary Judgment at 17).

The Court is unpersuaded that a lay person could not understand what it would entail for Webb to walk on a gravel-type surface with holes, objects, and railroad tracks. In *Taylor v. Illinois Central R.R. Co.,* 8 F.3d 584, 585-86 (7th Cir. 1993), a court ruled that, on an assertion by a railroad that a slip and fall on oversized ballast required expert testimony, that the issue "boils down to whether a pile of rocks is harder to stand on than a pile of smaller rocks…any lay juror could understand this issue without the assistance of expert testimony." UPRR claims that reliance on *Taylor* is misguided here but offers no reasoning as to how the issue of slipping on ballast in *Taylor* is materially different than Webb's fall here. In another railroad case, the court in *Lynch v. Northeast Regional Commuter R.R. Corp.*, 700 F.3d 906, 915 (7th Cir. 2012) found that there was no reason for expert testimony on the easily understood causal connection between improper installation of a top rail and its subsequent drop to the ground. This is also lends support to the determination at hand—there is an easily understood causal connection between allegedly unsafe ground conditions (i.e., rocks, objects, and holes) and a person slipping and falling based on those conditions. Expert testimony is not required for Webb's claims, and summary judgment is denied on this ground.

### III. Application of MO. REV. STAT. § 389.797

UPRR last moves for summary judgment asserting that Webb's allegation that UPRR breached MO. REV. STAT. § 389.797 fails to support Webb's FELA claim because it is precluded by the FRSA. As discussed above, this argument fails. In the alternative, UPRR argues that Webb failed to produce evidence that UPRR violated § 389.797. The statute provides that:

> Any person, firm or corporation doing business in this state shall keep and maintain those margins alongside their tracks, where railroad employees are required to walk in the course of their duties, reasonably free from debris, vegetation and any hazards known or which should have been known to exist, which affect the safety of such employees.

Webb alleges that UPRR violated § 389.797 so as to support a negligence per se determination. The main contention is whether or not the area in which Webb fell falls under the statute's description. UPRR argues that Webb was not required to walk in the area, and further argues that Webb was required to produce expert testimony as to whether the area was "reasonably free from debris, vegetation and any hazards…" The expert testimony argument, discussed above, fails. The remaining issue under § 389.797, then, is whether employees were required to walk in the area in the course of their duties. Webb offered evidence that it was a regular part of his duties to dismount a locomotive and "walk to locations where the railroad has positioned switches that align tracks in certain directions," and that Webb was doing this at the time he fell. (Plaintiff's Additional Statement of Uncontroverted Material Facts at ¶ 4-5). The Court finds this sufficient to raise a genuine issue of fact as to whether the subject area falls within the scope of the statute. The motion for summary judgment is denied on this ground.

UPRR also moves for summary judgment based on Webb's allegations of debris in the area in which he fell, stating that Webb offered no evidence that the presence of debris actually caused his fall. Webb alleges that he "believed" the combination of the ballast and debris caused him to fall. While Webb did not identify specific debris that he claims he tripped on, photographs taken

of the area after the fall do indeed show debris in the area. (Doc. 58-6). It is well established that claims under FELA, in comparison to tort litigation at common law, enjoy a "relaxed standard of causation." *CSX Transp, Inc. v. McBride*, 564 U.S. 685, 692 (2011). "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 505-06 (1957). Webb's allegations and evidence showing actual debris near where he fell support an inference that debris was a part of the allegedly dangerous conditions that caused him to fall. There is a genuine issue of material fact as to the role of debris in Webb's fall. Summary judgment on this ground is thus denied.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court hereby **DENIES** Defendants' Motion for Summary Judgment. (Doc. 50).

**IT IS SO ORDERED.**

Date:   August 10, 2020

> */s/ Douglas Harpool*
> Douglas Harpool
> United States District Judge